JOHN WEBSTER, .

*vs.*

JOHN C. HARKNESS, Garnishee of Charles Lemon, Jr.

LAW. No. 23,460.

{ Decided April 7, 1884.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

1. Where an assignment is made by a debtor to a third person as trustee for the benefit of the assignor's creditors, the assent of the creditors provided for to the assignments will be presumed.

2. In such case the money is no longer under the control of the debtor, and consequently is not liable to attachment.

THE CASE is stated in the opinion.

CHAS. A. ELLIOT for plaintiff.

WM. F. MATTINGLY for defendant.

Mr. Justice Cox delivered the opinion of the court.

The facts in this case appear to be, that Charles Lemon, jr., was a carpenter and builder, and was employed in 1881 to erect an addition to the building of the Washington City Orphan Asylum. The defendant, Harkness, was one of the trustees of the asylum, and superintendent of the work done by Lemon, and payments were made by the treasurer of the asylum on Harkness' certificates to him. Upon the finishing of the work, there was due to Lemon, the contractor, the sum of $276.25. But Lemon was indebted in a larger amount than this to a number of sub-contractors who had furnished materials and done work upon the building, and he requested Harkness to retain this money and apply it ratably among the claims of these sub-contractors. Harkness preferred that he should draw the money and then pay it over to him for that purpose, and he accordingly did it. He drew the money, and then paid it to Harkness, and accompanied his payment with the following note:

"Mr. Harkness. Sir: I herewith leave with you the balance of my asylum account, $276.25, which you will please distribute to my creditors for work and material furnished on said asylum *pro rata*. I will furnish you a statement of

indebtedness as soon as I can.  By doing this for me, you
will oblige, yours,

"CHARLES LEMON, JR.
"JANUARY 28, 1883."

On the same day on which this money was paid Harkness,
Lemon met the plaintiff in this case, Webster, who was one
of the sub-contractors, and to whom a small amount was
due, and informed him of the arrangement.  At the same
time, it appears that Lemon was indebted to him in a larger
amount, for work done on other houses, and the plaintiff
asked Lemon if he would confess a judgment in his favor,
which he consented to do.  He testifies that he confessed
judgment, because he knew that he was indebted to the
plaintiff, but he did not confess it to enable the plaintiff to
defeat his arrangement with Harkness.  As soon as the
plaintiff obtained judgment against Lemon, he caused an
attachment to be issued and levied upon the whole of this
fund in Harkness' hands.   The defendant, Harkness, pleaded
*nulla bona.*

The case went to trial on the facts I have mentioned, and
the court instructed the jury to find for the defendant, and
the plaintiff moves for a new trial on the bill of exceptions.

The question presented in the case is simply this : We
are to determine, where money or specific property has been
assigned to a person to be applied ratably among the
assignor's creditors, whether another creditor, not provided
for in that arrangement, can attach the fund in the hands
of the depositor at all; and if so, under what circumstances
and when.

It is claimed on the part of the plaintiff here, that inas-
much as the creditors provided for in this assignment were not
notified of it before the attachment was levied, and did not
give their assent to it, the transfer of the property in the
fund was not complete, and it remained the property of
Lemon, who had deposited it with Harkness, and therefore
subject to execution at the suit of other creditors.

It is not perfectly easy to harmonize all the authorities
upon this question.   There is a distinction, however, which

will tend to reconcile them, and that is, the distinction between an agency created in the depositary, for the party paying the money, and a complete trust for the benefit of other parties. As long as the depositary can be regarded as the agent of the party paying the money or delivering to him the specific property, there is no question that the property remains in the debtor, and is subject to the proceedings of his creditors until something else at least is done. One of the courts says: "Suppose I send my son with money to pay a note in bank, is it to be held that I cannot recall him, and retain possession of my money?" All this proceeds on the idea that the depositary is the agent, the servant, of the party delivering the money, and, as long as he retains that relation, there is no question about the liability of the fund to attachment for the creditors who are not provided for in the assignment. But even in that case, as soon as the creditors who are attempted to be provided for assent to the arrangement, or even are notified of it, and in that way are brought into privity with the depositary, then the debtor's control of the fund ceases, and it is no longer subject to attachment by other creditors than those specially provided for. That is one class of cases.

Another class of cases is, where it is manifest that the intention of both parties is that the control of the debtor over the fund shall pass from him immediately. Under that head, it is held that if the assignment is made immediately by the debtor to his creditors, their assent is necessary to perfect it, just as an actual delivery is necessary to perfect a gift. There must be two parties to the transaction, and however absolute the form of assignment may be, until it is accepted, it does not pass the property. But when the title and possession of the property have passed out of the debtor to a third person, as trustee for the creditors, then the courts hold that the assent of the creditors provided for will be presumed. That question was recognized as settled, by the Supreme Court, a long time ago, in the case of Brooks v. Marbury, 11 Wheaton, and in the case of Nicoll v. Mumford, 4 Johnson's Chancery Reports, 529; and many other

cases recognize the same thing. So that the distinction is between a mere agency for the debtor, which he may control, and a complete trust by which the title passes entirely out of him for the benefit of the creditors, and it must necessarily be a question of intention in each particular case.

Now, to apply this to the present case. Here was a fund which equitably belonged to the sub-contractors under Lemon, because it was due for the very work that they had furnished. It was in their power, by giving proper notice to the officers of the asylum, to secure that fund. But the necessity of that was obviated by the voluntary act of the contractor himself, who proposed to appropriate the fund to the use of the sub-contractors. A significant feature of the case is, that as soon as the money was deposited with Harkness, Lemon went about and notified the sub-contractors that it was there for their use ; and meeting this plaintiff on the same day, notified him of the arrangement, and within a week notified all the others. He notified the others, it is true, after the attachment had been levied, but it does not appear that he knew of that fact at the time. But the fact that he gave notice to them all is significant of his intention. It is obvious that he intended to put the fund entirely out of his control, to lodge it with Harkness irrevocably as a trust fund for the benefit of the sub-contractors who were equitably entitled to it, and we feel sure that Harkness would never have accepted it subject to the recall of this contractor himself, and that he took it with that understanding also ; and that would bring it within the rule that where the title passes out of a party to a trustee, the assent of the creditors intended to be benefited will be presumed.

But there is still another striking feature about this case. On the very same day on which the fund was put in Harkness' hands, the debtor gave notice to this plaintiff of the fact, and that this arrangement had been made partly for his benefit. Webster might have said to him, "I do not assent to that, I shall resort to my legal remedies," and might have gone to work and brought a suit and got judg-

ment and issued an attachment. Or, he might have done just what he did, and at the same time dissented from this arrangement. He might have said, "I do not assent to it, but I ask you to confess judgment, and I will relieve myself as best I can."

But he did nothing of that sort. He kept silent with reference to this arrangement. He knew perfectly well that Lemon did not confess judgment to him for the very purpose of defeating the arrangement just announced to him, and partly for his benefit; and when he asked Lemon to confess judgment, the latter had a right to assume that he assented to the appropriation of this fund to the sub-contractors. We think he was bound to formally dissent, or that he must be presumed to have assented to that arrangement at that time. That very fact put it beyond the power of Lemon to recall that fund, as far as Webster was concerned, and Webster could not assent to that arrangement so far as it benefited himself, and repudiate it so far as it benefited the other contractors. He could not dissent by a mere mental reservation. We think, under the circumstances, he is presumed to have assented to the arrangement that was announced to him, and there is authority for saying that, under these circumstances, if he had recovered his judgment, and got his money, these other subcontractors might have sued him for their money and recovered their shares from him. We think, on the whole, therefore, that the court was right in giving instructions that the verdict should be for the defendant.